AO 472 (Rev. 3/86) Order of Detention Pending Trial
=====================================================================

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                       ) | Mag. No. 07-50-C |
| ) | |
| JOHN BURKE,              ) | |
|     Defendant  ) | |

## ORDER OF DETENTION PENDING TRIAL

      In accordance with the Bail Reform Act, 18 U.S.C., Section 3142(f), a detention hearing has been held.  I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Findings of Fact

[ ]    (1)    The defendant is charged with an offense described in 18 U.S.C. Section 3142(f)(1) and has been convicted of a (federal offense)(state of local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is

    [ ] a crime of violence as defined in 18 U.S.C. Section 3156(a)(4).
    [ ] an offense for which the maximum sentence is life imprisonment or death.
    [ ] an offense for which the maximum term of imprisonment of ten years or more is prescribed in _____.
    [ ] a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. Section 3142(f)(1)(A)-(C), or comparable state or local offenses.

[ ]    (2)    The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.

[ ]    (3)    A period of not more than five years has elapsed since the (date of conviction)(release of the defendant from imprisonment) for the offense described in finding (1).

[ ]    (4)    Findings Nos. (1)(2) and (3) establish a rebuttable presumption that no condition or combination or combinations of conditions will reasonably assure the safety of (an) other person(s) and the community.  I further find that the defendant has not rebutted this presumption.

### Alternate Findings (A)

[ ]    (1)    There is probable cause to believe that the defendant has committed an offense

        [ ]    for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

        [ ]    under 18 U.S.C. Section 924(c).

[ ]    (2)    The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

## Alternate Findings (B)

[ ]    (1)    There is a serious risk that the defendant will not appear.

[x]    (2)    There is a serious risk that the defendant will endanger the safety of another person or the community.

## Part II - Written Statement of Reasons for Detention

I do not find, by a preponderance of the evidence, that the defendant poses a serious risk of flight. In any event, I am satisfied that there are conditions of release that can be fashioned that will reasonably assure his appearance as required. I do find, by clear and convincing evidence, that the defendant does pose a serious risk of danger to others and the community and that there are no available conditions of release that will reasonably protect against this risk for the following reasons.

The defendant is charged with possession of firearms by a person previously convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9). Following a preliminary examination held in conjunction with the detention hearing, the defendant conceded the existence of probable cause to believe that on October 21, 2007 he was in actual or constructive possession of the three firearms described in the complaint. Indeed, the weight of the evidence against the defendant on the possession charge is strong inasmuch as it shows that the defendant was convicted in Maine District Court in 1996 of assaulting his common-law wife Tammy Hagerman, a misdemeanor crime of domestic violence, and that he and Ms. Hagerman kept in their bedroom two long barrel hunting rifles and in various places within their home (including sometimes on the floor next to the living room couch) a Ruger 9 mm pistol.

In concluding that the defendant poses a risk of danger to others and the community which cannot reasonably be addressed by available conditions, I rely on the following evidence, in addition to the defendant's 1996 assault conviction. On October 21, 2007 the defendant's sixteen year-old daughter [REDACTED] placed a 911 call to the Scarborough Police Department and reported that the defendant and Ms. Hagerman were fighting and that the defendant had a gun. When Sergeant O'Neill arrived he met with the defendant who was confrontational and refused to go outside the home to speak with him. The defendant told O'Neill in the living area that his handgun had been put away and that he also owned a shotgun and a rifle which were also in the house. The defendant stated that O'Neill should worry about the long guns, not the handgun, but he refused to reveal the location of the handgun.

While O'Neill was dealing with the defendant, Officer Michael Sawyer spoke with Ms. Hagerman who reported that the defendant had pointed a 9mm handgun at her during their argument

that afternoon. [REDACTED] reported to Officer Sawyer and confirmed in her detention hearing testimony that she overheard her father say to her mother, "I'll blow your fucking head off."[1]

After the defendant was arrested and removed from the residence, Officer Sawyer attempted to speak to the defendant's twenty-one year-old son Jason who was also present in the home. Initially Jason was quiet and made clear that he did not want to talk to the officer. Later, however, after Ms. Hagerman told Sawyer that the defendant had put the handgun used to threaten her in one of the vehicles in the driveway, Jason retrieved a silver lock box from the trunk of an automobile in the driveway and then told Sawyer that the box contained the handgun and that the defendant had the keys to the locked box with him. The officers retrieved the keys at the jail and Sergeant O'Neill opened the locked box in which he found the Ruger pistol, ammunition, magazine clips and other items.

While being processed at the jail, the defendant stated to the processing correctional officer that he "should have shot the bitch in the head when [he] had the chance."

Although both Ms. Hagerman and [REDACTED] testified that they love and do not fear the defendant and would like him to be able to come home, I discount their testimony as it bears on the dangerousness issue in light of the entire factual history as recounted herein.

As an alternative to being released on conditions permitting him to reside with Ms. Hagerman and [REDACTED] at their home in Scarborough, the defendant proposed that he be released into the third-party custody of his 73 year-old stepfather, Richard Daughter, who also resides in Scarborough. Mr. Daughter's wife, the defendant's mother, is very ill and in the hospital. Mr. Daughter is himself infirm. Based on my observations of him during his testimony in behalf of the defendant, I conclude that Mr. Daughter, while well meaning, is not strong enough physically, emotionally or constitutionally to adequately perform the duties of third-party custodian and, therefore, cannot provide the kind of supervision of the defendant that even arguably might serve to reasonably address the dangerousness risk.

### Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extend possible, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge

---

[1] Tammy Hagerman testified inconsistently at the detention hearing. Initially she denied that the defendant threatened her with a gun or that she so indicated to the investigating police. Later she stated that she might have described the events of that afternoon, including the defendant's threatening conduct, as recorded by the police in their report, but to the extent she did so she was then not truthful. On cross-examination she conceded that on October 22nd, the day following the domestic disturbance, she went to the Scarborough Police Station and filled out the necessary paperwork to support her request for a protection order. She further testified that the temporary order that issued expired when she failed to appear in court as required ten days later. To the extent that Ms. Hagerman's hearing testimony is inconsistent with my factual findings noted in the body of this Order, I find her testimony not credible.

of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated: January 15, 2008.

                                                                          <u>/s/ David M. Cohen</u>  
                                                                          David M. Cohen  
                                                                          U.S. Magistrate Judge